## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

VINCENT MAZZOLA, individually and as
Administrator of the Estate of Theresa
Mazzola,

        Plaintiff,

                                          Case No. 8:13-cv-1127-T-24-TBM

v.

BROWN & BROWN, INC., a Florida
corporation,

        Defendant.
_____/

## ORDER

    This cause comes before the Court on Defendant Brown & Brown, Inc.'s ("B&B") Motion

for Summary Judgment. (Dkt. 17).  Plaintiff Vincent Mazzola filed a response in opposition to

summary judgment (Dkt. 26), and B&B filed a reply (Dkt. 32).  Also before the Court is B&B's

Motion to Strike Declarations of Vincent Mazzola and Ronald M. Lacey (Dkt. 30), which Mazzola

opposes (Dkt. 37.)  The Court conducted a hearing on both motions on May 19, 2014.

## I.      BACKGROUND

    In January 2006, Plaintiff Vincent Mazzola and his wife were on a fishing charter boat

owned by Lazy Bones Charter, Inc. ("Lazy Bones"), when they were struck by the "*M/Y Almost*

*There*," a 56-foot boat owned and operated by Ronald Lacey ("Lacey").  The accident resulted in

fatal injuries to Mazzola's wife.

    At the time of the accident, Lacey had a yacht insurance policy issued by The Standard

Fire Insurance Company ("Travelers"), providing $1,000,0000 of primary liability coverage for

the *M/Y Almost There*.  Lacey also had a personal umbrella policy, issued by Federal Insurance

Company ("Chubb"), providing $5,000,000 of personal excess liability coverage.  Lacey made a claim under both policies.  Chubb denied Lacey's excess liability claim because the personal umbrella policy contained a provision that excluded coverage for excess liability arising out of the ownership and operation of vessels exceeding 26 feet.

Mazzola sued Lacey, the *M/Y Almost There*, and the Lazy Bones, for negligence and wrongful death in federal court ("underlying tort action").[1]  In May 2007, Mazzola and Lacey entered into a stipulation and agreement to settle the underlying tort action (the "Agreement").  The Agreement provided that: a $4,000,000 consent judgment would be entered against Lacey (Agmt. ¶ 1); Mazzola would accept the policy limit of the Travelers primary liability insurance[2] and $250,000 from Lacey in partial satisfaction of the judgment (Agmt. ¶ 1); Lacey would assign the proceeds of his causes of action and, upon further written request, assign his causes of action to Mazzola (Agmt. ¶ 2); and Mazzola would not execute against Lacey for the remaining portion of the judgment (Agmt. ¶ 3).  On June 6, 2007, the Court entered a $4 million consent judgment against Lacey.

Mazzola then sued Chubb in state court, seeking excess liability coverage under the Chubb personal umbrella policy.  The state court entered partial summary judgment in Chubb's favor, finding that, under the terms of the umbrella policy, no coverage was available for Lacey's operation of the *M/Y Almost There*.  The case then proceeded to trial on Mazzola's oral binder and promissory estoppel claims.  During the trial, the state court entered a directed verdict in Chubb's favor on the oral binder theory, after which Mazzola and Chubb settled for $125,000.   In March 2013, the coverage action was dismissed with prejudice.

---

[1] *Mazzola v. Lacey*, No. 06-cv-1870-T-24-EAJ (M.D. Fla.).
[2] Travelers paid $970,000 to Mazzola, and $30,000 to Lazy Bones.

In April 2013, Mazzola brought this action against B&B under an alleged assignment from Lacey, claiming B&B failed to procure adequate excess liability insurance coverage for Lacey's operation of the *M/Y Almost There*.  Mazzola alleges B&B breached its contract with Lacey (count I), breached its duty to exercise reasonable care (count II), and breached its fiduciary duty to Lacey (count III), and seeks to recover the unpaid portion of the judgment from the underlying tort action.

On March 3, 2014, B&B filed a motion for summary judgment on all counts, arguing that Mazzola cannot bring this action against B&B because Lacey never assigned his causes of action against B&B to Mazzola.  (Dkt. 17.)  B&B contends the Agreement, by its terms, assigns the proceeds but not Lacey's causes of action to Mazzola, and Lacey and Mazzola never executed another agreement assigning Lacey's causes of action.

In opposition to summary judgment, Mazzola contends he was assigned Lacey's causes of action against B&B.  (Dkt. 26.)  Mazzola argues that the Agreement itself assigned Lacey's causes of action.  Alternatively, Mazzola argues that, at the time the Agreement was executed, he and Lacey entered an oral agreement for Lacey to assign his causes of action against B&B to Mazzola.  As evidence of the oral assignment, Mazzola submits declarations from himself and Lacey.  (Dkt. 26-2, Dkt. 26-4.)

In response to Mazzola's oral assignment argument, B&B filed a motion to strike Mazzola's and Lacey's declarations, arguing that they are sham affidavits and are inadmissible under the parol evidence rule. (Dkt. 30.)  B&B also filed a reply to Mazzola's summary judgment response, arguing that evidence of an oral assignment cannot defeat summary judgment because evidence of the oral assignment is barred for the reasons stated in its motion to strike. (Dkt. 32.)

Because B&B's motion to strike and motion for summary judgment arguments both address the alleged assignment of Lacey's causes of action, the Court will consider the motions together.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  *See Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  *See id.*  When a moving party has discharged its burden, the non-moving party must go beyond the pleadings and, by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. To establish a genuine issue, a party must present more than mere conclusions and unsupported factual allegations.  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

## III.   DISCUSSION

### A.   <u>Written Assignment of Lacey's Causes of Action to Mazzola</u>

B&B argues that Mazzola cannot bring this action under an assignment from Lacey because the Agreement does not assign Lacey's causes of action against B&B to Mazzola.  (Dkt. 17.)   B&B contends paragraph 2 of the Agreement does not assign Lacey's causes of action; rather, it assigns the *proceeds* of Lacey's causes of action and provides the option, upon further written request, for a future assignment of Lacey's causes of action:

> Except as is set forth in paragraph 3 below, [Lacey] does hereby unto [Mazzola] assign unconditionally and irrevocably the proceeds from any and all actions, causes of actions, or rights it has against any person or entity, other than those

> released by paragraph nine, including, but not limited to, [Chubb] arising out of, or in any way relating to, the events which are the subject of the [underlying tort action] to the extent of the amount of the JUDGMENT . . . . [Lacey] further grants an option to [Mazzola] to receive, upon further written request, assignment of all rights, claims, actions, or causes of action, [Lacey] has against [Chubb] arising out of or in any way related to the subject matter of the [underlying tort action] to the extent of the amount of the JUDGMENT . . . .

(Dkt. 17-1 ¶ 2).

In response, Mazzola argues that the Agreement, by its terms, assigns Lacey's causes of action. Further, during oral argument, Mazzola's counsel represented to the Court that Mazzola was relying on the Agreement, rather than a simultaneous oral assignment, to show that he had been assigned Lacey's causes of action. Specifically, Mazzola contends the plain language of paragraph 2—when read along with paragraphs 4 and 5—shows that Lacey assigned his causes of action against B&B to Mazzola. (Dkt. 26 at 13-16.) Paragraph 4 provides in part:

> As it is asserted that [Chubb] has wrongfully denied defense to [Lacey], the parties agree that the ability to prosecute causes of action are governed by the reasoning in Shook v. Allstate, 498 So. 2d·498 (Fla. 4th DCA 1986), which permits the insured to enter into a consent judgment and assignment of rights to proceeds or causes of action with such agreement providing that no execution or other collection on the consent judgments will be made against the insured, without such an agreement operating to extinguish the liability of an insurer for its breach of contract and/or bad faith. Moreover, the provision of the protection from execution shall be deemed executory and of no effect until after entry of the judgments and assignment of rights as contemplated herein. Further, that under Revoredo, supra, the assignment of the rights to causes of actions and assignment of proceeds are occurring prior to the provision of a covenant not to execute and specifically include the rights against [Chubb]. Consequently, the exposure to [Chubb] is not intended to be extinguished by this agreement.

(Dkt. 17-1 ¶ 4). Paragraph 5 provides in part:

> In the event that [Lacey] is requested to prosecute the actions or causes of action against [Chubb] subject to the assignment of proceeds, then [Lacey] agrees to promptly file and diligently prosecute such actions . . . .

(Dkt. 17-1 ¶ 5).

5

However, the Agreement does not assign Lacey's causes of action against B&B to Mazzola.   Paragraph 2 assigns Lacey's right to the proceeds of his causes of action and provides the option for Mazzola to receive, upon written request, an assignment of Lacey's causes of action. Paragraph 2 does not assign the causes of action themselves.   Nor does paragraph 4 or paragraph 5 contain any language assigning Lacey's causes of action against B&B to Mazzola.

Alternatively, Mazzola argues that the Agreement is ambiguous as to whether Lacey assigned his causes of action, and the Court should therefore consider extrinsic evidence—*i.e.,* the parties' interpretation of the Agreement (that Mazzola and Lacey believed the Agreement would assign Lacey's causes of action) and their post-Agreement conduct (that Mazzola proceeded to sue Chubb under the assignment in the state court coverage action).   However, Mazzola has not identified (and the Court has not found) any language in the Agreement that is susceptible to more than one interpretation on this issue.  The Court finds no ambiguity in the Agreement and therefore declines to determine the parties' intent based on extrinsic evidence.  *See Dimmitt Chevrolet, Inc. v. Se. Fid. Ins. Corp.*, 636 So. 2d 700, 705 (Fla. 1993).

Accordingly, the Court grants summary judgment in favor of B&B to the extent that the Agreement does not assign Lacey's causes of action against B&B to Mazzola.   The Court now turns to Mazzola's alternative argument that, even if the Agreement does not assign Lacey's causes of action, summary judgment still should not be granted because Lacey orally assigned his causes of action to Mazzola.

**B.**      **Oral Assignment of Lacey's Causes of Action to Mazzola**

Mazzola asserts that, at the time the Agreement was executed, Mazzola and Lacey entered into a simultaneous oral agreement where Lacey assigned his causes of action against B&B to Mazzola.  (Dkt. 26.)   As evidence of the alleged contemporaneous oral agreement, Mazzola

6

submits declarations from himself and Lacey.  (Dkts. 26-2, 26-3.)  In reply, B&B contends Mazzola's alternative argument cannot defeat summary judgment because evidence of the alleged oral assignment is inadmissible.  (Dkt. 32.)  This brings the Court to B&B's motion to strike the declarations. (Dkt. 30.)

### 1.    B&B's Motion to Strike Declarations[3]

B&B argues that Lacey's and Mazzola's declarations, which were filed with Mazzola's response to B&B's summary judgment motion, should be stricken because they: (a) are sham affidavits; (b) are inadmissible under the parol evidence rule; and (c) contain legal conclusions and conclusory allegations that are not based on personal knowledge.  (Dkt. 30.) [4]

### a.    Sham Affidavit

B&B argues that Lacey's and Mazzola's declarations should be stricken as shams, because they conflict with their prior deposition testimony and were manufactured solely to defeat B&B's summary judgment motion.  (Dkt. 30.)  In response, Mazzola argues that there is no conflict because B&B only asked about written, not oral, assignments during the depositions.  (Dkt. 37.)

In the Eleventh Circuit, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). However, there is a distinction "between discrepancies which create transparent shams and

---

[3] B&B's motion to strike does not specify which portions of the declarations should be stricken; rather, it seeks to strike Lacey's and Mazzola's declarations in their entirety.  However, B&B's motion is primarily focused on striking any testimony regarding the existence of the alleged oral assignment between Lacey and Mazzola.  Only paragraphs 4, 5 and 6 of Lacey's declaration addresses the alleged oral assignment; the remaining paragraphs of Lacey's declaration do not and Mazzola's declaration does not.

[4] The Court does not reach B&B's third argument because it grants B&B's motion to strike on the first two grounds.

discrepancies which create an issue of credibility or go to the weight of the evidence." *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986). A court may disregard an affidavit as a sham if "the affiant (1) makes a conclusory, unexplained assertion regarding a material fact which (2) directly contradicts that person's unequivocal deposition testimony." *Tippens v. Celotex Corp.*, 815 F.2d 66, 68 (11th Cir. 1987) (Hill, J., dissenting); *see also Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987) ("[O]ur cases require a court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit."). But "[v]ariations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility" to be resolved by the trier of fact. *Tippens*, 805 F.2d at 954.

### (1)   Lacey's Declaration

B&B contends Lacey's declaration should be stricken as a sham because paragraph 4 of the declaration states that Lacey either: (a) understood that the Agreement assigned his causes of action against B&B to Mazzola, after which Lacey orally confirmed that assignment, or (b) Lacey simultaneously executed the Agreement and orally assigned his causes of action:

> 4.   Simultaneously to the execution of the *Coblentz* Agreement, I orally assigned/confirmed the assignment to Mazzola, of all causes of action arising out of or in any way related to the subject matter of the [underlying tort action]; such that Mazzola would serve as Plaintiff and that his attorneys would handle such future litigation against Chubb, [B&B], and/or any other responsible person or entity (unless Mazzola requested me to serve as Plaintiff). I also orally assigned/confirmed the assignment to Mazzola of the proceeds of all such litigation . . . .

(Dkt. 26-2 ¶ 4; *see also id.* at ¶¶ 5-6.) During Lacey's prior deposition, however, B&B's counsel asked Lacey whether he had signed any other agreements or assignments other than the Agreement, and Lacey answered that he did not agree to or sign anything else:

> Q. Have you signed any other kind of stipulations or agreements or assignments or anything with the Mazzolas, since you signed Exhibit 22 [the Agreement]?

A. I have not signed any agreements that I know of since this. Since I settled everything out with - through my attorney's office . . , **I didn't agree or sign anything else**.

(Jan. 14, 2014 Lacey Dep. Tr. 131) (emphasis added).   After reading aloud paragraph 2 of the Agreement, B&B's counsel asked Lacey whether he received a request for, and provided, an assignment:

Q. Okay. Let me ask you that specific question. Turning to page 4 of 16. I'm down at paragraph 2 [of the Agreement]. . . . It says, "Defendant further grants an option to plaintiff to receive, upon further written request assignment of all rights, claims, actions or causes of action, defendant has against insurer arising out of or in any way related to the subject matter of the lawsuit to the extent of the amount of the judgment and attorney's fees and costs incurred by the defendant related thereto from the date of this agreement." Did I read correctly?

A. Yes.

Q. Have you signed—well, first of all, have you been requested to sign any further assignment of causes of action, et cetera?
. . . .

A. I do not—I do not remember signing anything after [the Agreement].

. . . .

Q. So to your knowledge, you don't believe you ever received a request from Mazzola for an assignment of any cause of action, and that you never provided that?

. . . .

A. I do not remember—I thought this was the last thing I signed, **and I thought that was it,** as it relates to my issues with the Mazzolas in this lawsuit and my lawsuit with them.

(Jan. 14, 2014, Lacey Dep. Tr. 131-32) (Dkt. 30-5) (emphasis added).

The Court finds paragraph 4 of Lacey's declaration contradicts his prior deposition testimony.  During his deposition, Lacey testified that he did not agree to or sign anything other than the Agreement, and that he believed signing the Agreement was all he had to do.  This is inherently inconsistent with his declaration, where Lacey testifies that he not only entered the written agreement, but also entered an oral agreement to assign his causes of action.  Further, the

Court is not persuaded by Mazzola's argument that the questions solely related to written, not oral, agreements and therefore there is no conflict.  One of B&B's questions was not limited to written assignments.  Moreover, while one of B&B's questions pertained to signing documents, Lacey's answer went beyond the scope of that question by testifying that he did not agree to anything else.

Further, Lacey's declaration fails to explain the discrepancy between his declaration and deposition testimony.  To the extent Mazzola attempts to explain the discrepancy by asserting that B&B's questions only asked about written, not oral, assignments, the Court rejects this explanation for several reasons.  First, B&B's questions were not all limited to written assignments.  Further, it is implausible that when asked about assigning his causes of action, Lacey would not have explained that he orally assigned his causes of action to Mazzola.  *See e.g., Santhuff v. Seitz*, 385 Fed. Appx. 939, 945 (11th Cir. 2010) (rejecting the affiant's explanation for his inconsistent testimony as to whether he saw photographs, finding it implausible that "in his first two affidavits Fisher understood the word 'photograph' to mean pictures stored on the computer, but in his deposition he understood it to mean only printed images on paper").

 Accordingly, B&B's motion to strike is granted to the extent that paragraph 4 of Lacey's declaration, along with references to an oral assignment in paragraphs 5 and 6, will be disregarded.

### (2)    Mazzola's Declaration

B&B contends Mazzola's declaration should be stricken as a sham because paragraph 4 of the declaration states that Mazzola understood that he was assigned Lacey's causes of action against B&B at the time he executed the Agreement:

> 4. At the time the written Stipulation and Agreement . . . was executed, it was my understanding [Lacey] had assigned me his right to sue [Chubb], [B&B] and any other responsible person or entity, arising out of or related in any way to the subject matter of the [underlying tort lawsuit]; so that I would serve as Plaintiff, and that my attorneys would handle such future litigation against Chubb, [B&B], and/or any other responsible person or entity.

10

(Dkt. 26-3 ¶ 4.)  During Mazzola's prior deposition in this case, B&B's counsel asked and

Mazzola answered the following questions:

> Q. As I appreciate it, by signing this document, Mr. Lacey assigned unconditionally and irrevocably to you the proceeds from any and all actions, causes of actions, or rights it has. . . . Was it your understanding that that assignment was provided by this document?
>
> . . . .
>
> A. Yes.
>
> ****
>
> Q.  Did you ever receive from Mr. Lacey such a further assignment of rights and actions?
>
> . . . .
>
> A.  Let me make sure I understand the question.  Beyond this document, are you saying there's another document?
>
> Q. That's my question.
>
> . . . .
>
> A.  Not to my recollection.
>
> Q.   Just so I'm clear, and I'm not going to belabor the point, you're not aware of any further assignments from Mr. Lacey other than what are incorporated in Exhibit 22?
>
> . . . .
>
> A.  Yes.
>
> Q.   Do you know if either you or your attorney ever requested from Mr. Lacey that further assignment?
>
> . . . .
>
> A.  I do not recall.

(Jan. 16, 2014 Mazzola Dep. Tr. 57-60) (Dkt. 30-4).

The Court finds an inconsistency between paragraph 4 of Mazzola's declaration and his

prior deposition testimony.  According to Mazzola's prior deposition testimony, he understood

that the Agreement assigned him the proceeds of Lacey's causes of actions.  This is inconsistent

with his declaration's statement that, at the time the Agreement was executed, Mazzola understood he had been assigned Lacey's causes of action.  Notably, nothing in Mazzola's declaration—paragraph 4 or otherwise—even addresses the alleged oral agreement, let only specifies that he was orally assigned Lacey's causes of action.  *See supra* n.3.  However, there is still an inconsistency.  Accordingly, B&B's motion to strike is granted to the extent that paragraph 4 of Mazzola's declaration will be disregarded.

### b.    Parol Evidence Rule

B&B contends Florida's parol evidence rule provides an alternative basis for striking testimony regarding the alleged oral assignment in Lacey's and Mazzola's declarations.  (Dkt. 30.)  Specifically, B&B argues that evidence of the alleged oral agreement is inadmissible because it varies or contradicts the unambiguous language of a fully integrated contract.  In response, Mazzola makes several arguments as to why the parol evidence rule does not bar evidence of the alleged contemporaneous oral agreement.

In Florida, the parol evidence rule "applies when the parties intend that a written contract incorporate their final and complete agreement, such as by using an integration clause." *Johnson Enter. Of Jacksonville, Inc. v. FPL Group, Inc*. 162 F.3d 1290, 1309 (11th Cir. 1998).  Under this rule, parol evidence is not admissible to vary the terms of a written agreement. *Johnson v. Johnson*, 403 So. 2d 1388, 1390 (Fla. 2d DCA 1981).  This is because:

> All conversations and parol agreements between the parties prior to or contemporaneous with the written agreement are considered to have been merged therein so that they cannot be given in evidence for the purpose of changing the contract or showing an intention or understanding different from that which is expressed in the written agreement.

*Id.* (citation omitted).  However, "the parol evidence rule does not preclude evidence of a contemporaneous oral agreement amounting to a separate transaction which does not relate to the agreement embodied within the written instrument."  *Id*. (citation omitted).  "Whether the oral

agreement comes within the field embraced by the written one depends on whether both agreements relate to the same subject matter and are so interrelated that it would be expected that the parties would naturally and normally include the oral agreement within the written one." *Id.* (citation omitted); *see also B.F. Goodrich Co. v. Brooks*, 113 So. 2d 593, 596 (Fla. 2d DCA 1959) ("a writing does not displace the oral agreement if the latter is not inconsistent with the writing and is such as might naturally be made as a separate agreement by parties situated as were the parties to the written contract") (citation and internal quotation marks omitted).

In this case, evidence of a contemporaneous oral agreement is inadmissible under the parol evidence rule because the alleged oral agreement varies with the Agreement.  At the outset, the Agreement is a fully integrated contract pursuant to the following integration clause:

> This Agreement and the agreements and documents referred to herein contain the entire agreement and understanding among the parties hereto with respect to the subject matter hereof and supersede all prior agreements and understandings, whether written or oral. THE PARTIES HERETO ARE NOT RELYING, nor shall in any way rely, upon any oral or written agreements, representations, warranties, statements, promises, or understandings not specifically set forth in this Agreement.

(Dkt. 17-1 ¶ 13.)  The Agreement obligates Lacey to give an option for a future assignment upon Mazzola's written request. (*Id.* ¶ 2.)  However, this term is varied by the alleged oral agreement, which contemporaneously obligates Lacey to give an immediate assignment without Mazzola's written request.  (Dkt. 37-2 ¶ 4.)  Because it varies the terms of the written contract, the alleged oral assignment is excluded by the Agreement's integration clause and the parol evidence rule.

Mazzola argues that, because the Agreement contemplates an assignment of Lacey's causes of action, the alleged oral assignment is consistent with the Agreement.  The Court disagrees.  The alleged simultaneous oral assignment is inconsistent with the Agreement's terms, despite the fact that the Agreement contemplates the option for Mazzola to receive an assignment. For example, in *Schwartz v. Zaconick*, the terms of a note and mortgage contemplated interest

13

payable semi-annually but, according to a contemporaneous oral agreement, the interest provision would not be operative unless the mortgagors sold the property to third parties.  68 So. 2d 173, 174 (Fla. 1953).  The Florida Supreme Court found that the contemporaneous oral agreement "[sought] to impose a condition on that which is expressly unconditional by the terms of the instrument," and held that it was barred by "the ancient and familiar rule of exclusion that a contemporaneous oral agreement may not be availed of to vary the terms of a formal written instrument."  *Id.* at 175.

Next, Mazzola cites to the rule that an oral agreement may modify a written agreement if the parties have accepted the oral agreement and acted upon it in such a manner as would work a fraud on either party in the event the court refused to enforce it.  (Dkt. 37 at 14 (citing *Professional Ins. Corp. v. Cahill*, 90 So. 2d 916 (Fla. 1956)).  However, that rule is inapposite.  Under that rule, a subsequent parol agreement may modify a written agreement under certain circumstances.  That rule does not apply where, as here, the alleged oral agreement was made contemporaneously with the execution of the Agreement.  *See Johnson v. Johnson*, 403 So. 2d 1388, 1390 (Fla. 2d DCA 1981) (where the alleged oral agreement was made prior to or contemporaneous with the written agreement, the rule allowing subsequent parol agreement to modify a written contract was inapposite).

Finally, Mazzola relies on the principle that parol evidence is admissible to determine the meaning of ambiguous contract language.  The Court rejects this argument because the Agreement is not ambiguous.

Accordingly, Mazzola's motion to strike is granted to the extent that evidence of the alleged contemporaneous oral agreement is inadmissible under the parol evidence rule.

## 2.   *The Alleged Oral Agreement Cannot Defeat Summary Judgment*

Because the Court has stricken evidence of the alleged oral assignment under the sham affidavit rule, and alternatively, under the parol evidence rule, Mazzola cannot rely on the alleged oral assignment to create a genuine issue as to whether Lacey assigned his causes of action against B&B to Mazzola.

The declarations, with the omission of the oral assignment, are insufficient to create a genuine issue of material fact. Under Rule 56, an affidavit used to oppose a motion for summary judgment "must be made on personal knowledge" and "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). The Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value," and that affidavits opposing summary judgment must "set[] forth specific facts to show why there is an issue for trial." *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (citations and quotation marks omitted). The declarations express understandings and conclusions, not facts. Because the declarations lack sufficient facts, they cannot create a genuine issue of material fact as to whether Lacey assigned his causes of action against B&B to Mazzola.

## C.   <u>Mazzola's Other Arguments Against Summary Judgment</u>

Mazzola argues that, even if Lacey did not assign his causes of action against B&B to Mazzola—through a written assignment or an oral assignment—summary judgment still should be denied for several reasons. First, Mazzola argues that B&B's answer and affirmative defenses constitute judicial admissions regarding an assignment from Lacey to Mazzola. (Dkt. 26 at 4-8.) However, the Court has reviewed B&B's pleading allegations and finds no factual allegation that could be deemed a judicial admission. The Court therefore rejects Mazzola's contention that B&B's answer and affirmative defenses constitute admissions that Lacey assigned his causes of action to Mazzola.

Second, Mazzola asserts—without citation to record evidence or Florida cases—that the Court should find that there was a mistake and should reform the Agreement to state that Lacey assigned his causes of action against B&B to Mazzola. (Dkt. 26 at 19.)  However, Mazzola fails to provide any basis for reforming the Agreement based on the parties' mistake.  The Court therefore rejects Mazzola's reformation argument.

Third, Mazzola argues that he can nonetheless sue as a third-party beneficiary. (Dkt. 26 at 8.) He cannot. As Mazzola acknowledges,[5] he did not bring this action as a third-party. Moreover, in his prior response in opposition to B&B's motion to dismiss, Mazzola asserted that he was only bringing direct claims, not third-party claims. (Dkt. 5.)  And the Court's order denying B&B's motion to dismiss was based in part on Mazzola's prior representation that his causes of action are Lacey's derivative causes of action and not third-party claims. (Dkt. 10.)

Because there is no genuine issue of material fact as to whether Lacey assigned his causes of action against B&B to Mazzola, Mazzola cannot bring this action and B&B's motion for summary judgment is granted.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

A. Defendant Brown & Brown's Motion to Strike Declarations of Vincent Mazzola and Ronald M. Lacey (Dkt. 30) is **GRANTED IN PART**.

B. Defendant Brown & Brown's Motion for Summary Judgment (Dkt. 16) is **GRANTED**.

C. The pretrial conference scheduled for June 10, 2014 is cancelled.

---

[5] "While MAZZOLA did not specifically plead as third-party beneficiary, the pleadings, depositions, answers, and affidavits provide sufficient bases to define MAZZOLA's status as such, which obviates and precludes BROWN's Motion for Summary Judgment, as a matter of law." (Dkt 26 at 8 n.4.)

     D.  The Clerk is directed to enter judgment in favor of Defendant Brown & Brown, to

terminate all pending motions, and to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 30th day of May, 2014.

*Susan C. Bucklew*

SUSAN C. BUCKLEW
United States District Judge

Copies To: Counsel of Record